**David M. DRISCOLL, individually and on behalf of all others similarly situated Plaintiff,**

v.

**The GEORGE WASHINGTON UNIVERSITY, Defendant.**

**Civil Action No. 12–cv–690 (ESH)**

United States District Court, District of Columbia.

Signed July 17, 2014

108

**110**

Lesley Anne Tse, Michael J.D. Sweeney, Dan Charles Getman, Getman & Sweeney, PLLC., New Paltz, NY, for Plaintiff.

Raymond C. Baldwin, Alexander J. Passantino, Esther Slater McDonald, Seyfarth Shaw, LLP, Washington, DC, Richard L. Alfred, Seyfarth Shaw LLP, Boston, MA, for Defendant.

### MEMORANDUM OPINION AND ORDER

ELLEN SEGAL HUVELLE, United States District Judge

Presently before the Court is plaintiffs' counsel's application for costs and attorneys' fees in light of the settlement agreement reached by the parties on February 28, 2014. (*See* Pl.'s Application for Costs and Fees, Mar. 31, 2014 [ECF No. 94]

("Application").) Having considered this application, defendant's opposition, (Resp. to Pl.'s App. for Costs and Fees, Apr. 17, 2014 [ECF No. 95] ("Opp.")) and plaintiffs' counsel's reply, (Reply Mem. of Law in Support of Pl.'s Application for Costs and Fees, Apr. 28, 2014 [ECF No. 97] ("Reply")) the Court will grant plaintiffs' counsel's request in part. For the reasons discussed below, the Court will award plaintiffs' counsel $387,710.48 in fees and $13,510.42 in costs.

### BACKGROUND

The material facts relevant to this case were described in detail in this Court's two prior opinions. *See Driscoll v. George Washington Univ.*, 42 F.Supp.3d 52, 2012 WL 3900716 (D.D.C. Sept. 10, 2012) (*"Driscoll I"*); *Driscoll v. George Washington Univ.*, 938 F.Supp.2d 19 (D.D.C. 2013) (*"Driscoll II"*). An abbreviated and updated version of the facts will therefore suffice.

On April 27, 2012, David M. Driscoll sued his former employer George Washington University ("GWU") on behalf of himself and other similarly situated employees. (*See* Compl., Apr. 27, 2012 [ECF No. 1].) In his complaint he alleged that he and other executive assistants, executive coordinators, and executive associates employed by GWU were unlawfully denied overtime pay to which they were legally entitled under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the D.C. Minimum Wage Act, D.C. Code §§ 32–1001, *et seq.* ("DCMWA"), and the D.C. Wage Payment and Collection Law, D.C. Code §§ 32–1301, *et seq.* ("DCWPCL"). *See Driscoll I*, 42 F.Supp.3d at 54–56, 2012 WL 3900716, at *1. He further alleged that after voluntarily re-classifying these employees, GWU provided insufficient back pay. *See Driscoll II*, 938 F.Supp.2d at 20.

On July 3, 2012, defendant filed a motion to dismiss all of plaintiff's claims, (*see* Mot. to Dismiss First Am. Compl., July 3, 2012 [ECF No. 9]) and on July 17, 2012, plaintiff filed a cross-motion for leave to file a second amended complaint alleging additional facts as well as adding a Rule 23 class action claim under the DCMWA. (*See* Cross–Mot. to Am. the Class Action Compl., July 17, 2012 [ECF No. 12].) On September 10, 2012, the Court denied plaintiff's motion to file a second amended complaint insofar as it sought to add a new Rule 23 opt-out class action claim under the DCMWA and granted plaintiff's motion insofar as it sought to plead additional facts. *Driscoll I,* 42 F.Supp.3d at 63, 2012 WL 3900716, at *9. The Court denied defendant's motion to dismiss in its entirety. *Id.* Soon thereafter, the Court conditionally certified an opt-in collective action under § 216(b) of the FLSA and notice was issued to one hundred and sixty-nine potential plaintiffs. *See Driscoll II,* 938 F.Supp.2d at 21. Twenty-one individuals filed opt-in consent forms to join the lawsuit, though three subsequently withdrew their consent. Plaintiffs then filed a motion to certify an opt-out Rule 23 class action based on their DCWPCL claim and defendant filed a partial motion for summary judgment on plaintiffs' DCWPCL claim alleging that the DCMWA was the exclusive state-law vehicle for challenging defendant's actions. (*See* Mot. to Certify Class, Oct. 11, 2012 [ECF No. 34]; Mot. for Partial Summ. J., Dec. 4, 2012 [ECF No. 45].)

On April 5, 2013, the Court granted defendant's motion for summary judgment on plaintiffs' DCWPCL claim. After noting that the question was one of first impression in this jurisdiction, the Court concluded that plaintiff could not bring a DCWPLA claim "based on the same facts as [an] [actionable] DCMWA claim." *Driscoll II,* 938 F.Supp.2d at 23. Because the Court concluded that plaintiffs could not bring a DCWPCL claim, the Court denied plaintiffs' motion for Rule 23 class certification as moot. *Id.* at 25.

The parties held their Rule 26(f) conference on May 1, 2013, and began exchanging discovery soon thereafter. (Decl. of Michael J.D. Sweeney in Support of Pl.'s Application for Costs and Fees, Mar. 31, 2014 [ECF No. 94–2] ("Sweeney Decl."), at ¶ 6.) On or about August 22, 2013, the parties began to discuss the possibility of settlement. (*Id.* at ¶ 12.) After extensive discussions held in Washington, D.C. under the direction of mediator Nancy Lessor, the parties reached an initial settlement term sheet on December 7, 2013. Six weeks later the parties agreed to a final version of the Confidential Settlement Agreement. As part of this agreement, approved by the Court, defendant agreed to pay plaintiffs' counsel "reasonable attorneys' fees and costs as determined by this Court." (*Id.* at ¶¶ 13–17.)

On March 31, 2014, plaintiffs' counsel filed the present application for costs and fees. With it, plaintiffs' counsel also provided the Court with detailed billing records and receipts for all purported costs.[1] (*See* Application Ex. A [ECF No. 94–3]; Application Ex. B. [ECF No. 94–4] ("Receipts").) Defendant filed an opposition to this application and plaintiffs' counsel filed a reply. Based on its careful review of these filings, the Court is now tasked with (1) determining the appropriate method for calculating reasonable attorneys' fees in this case and (2) calculating those fees

---

1. Upon the Court's request, plaintiffs' counsel also provided access to a digital file of the billing records on June 12, 2014.

and costs to which plaintiffs' counsel is entitled.

## ANALYSIS

### I. LEGAL FRAMEWORK

 Under the FLSA, the Court must "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The purpose of this mandatory fee-shifting scheme is to "provide an adequate economic incentive for private attorneys to take employment discrimination cases, and thereby to ensure that plaintiffs would be able to obtain competent legal representation for the prosecution of legitimate claims." *See Laffey v. Nw. Airlines, Inc.*, 746 F.2d 4, 11 (D.C.Cir.1984), *overruled in part on other grounds by Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C.Cir.1988); *see also, e.g., Heder v. City of Two Rivers*, 255 F.Supp.2d 947, 952 (E.D.Wis.2003), *aff'd*, 93 Fed.Appx. 81 (7th Cir.2004) ("The [FLSA fee-shifting] provision exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail and, thereby to help ensure the enforcement of the substantive provisions of FLSA.") While the Court has considerable latitude in calculating the appropriate attorneys' fees and costs, it also has an affirmative duty to ensure that whatever amount it awards is "reasonable." *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

### II. PROPER METHOD FOR CALCULATING REASONABLE ATTORNEYS' FEES

 The first disputed issue in the case is the appropriate method for calculating plaintiffs' attorneys' fees. Plaintiffs' counsel advocates for the use of the so-called "lodestar approach," which "as its name suggests, [has] become the guiding light of [the Supreme Court's] fee-shifting jurisprudence." *Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 551, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010) (internal citations and quotation marks omitted); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C.Cir.1993) (concluding that the lodestar method is appropriate when calculating fees based on fee-shifting statutes). Under this approach, "[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "Developed after the practice of hourly billing had become widespread ... the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 559 U.S. at 551, 130 S.Ct. 1662 (internal citations omitted) (emphasis in original). This approach is favored in the fee-shifting context because it encourages attorneys to undertake such cases despite low opt-in rates and the potential for relatively small aggregate recoveries.[2]

**2.** The reasons for low opt-in rates and small recoveries in FLSA cases are well-documented. *See, e.g.*, Iliza Bershad, "Employing Arbitration: FLSA Collective Actions Post-*Concepcion*," 34 *Cardozo L. Rev.* 359, 385 (2012) ("[S]tudies show that only 15.71% of potential plaintiffs consent to opt in to collective action classes under FLSA. These low opt-in rates are attributed to a number of factors, most of which are grounded in the demographic of the typical FLSA plaintiff. Low income individuals, who are most at risk of wage-hour violations, tend to be the most mobile and have the highest turnover rates, and thus they often do not receive notice of impending litigation when it is sent to them. Employees with low education levels, such as likely FLSA plaintiffs, are also less likely to understand

 Defendant, on the other hand, advocates for the Court to apply the "percent-of-fund" method to calculate the reasonable attorneys' fees in this case. (Opp. at 6.) Under this method, "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Swedish Hosp. Corp.*, 1 F.3d at 1265 (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)). The percent-of-fund method is generally used in the Rule 23 class action context and is predicated on the idea that the costs of such actions ought to be "spread to the beneficiaries of the fund." *Id.* As defendant correctly notes, the Court of Appeals has not "specifically addressed the application of the percent-of-fund method to [the] calculation of fee awards in FLSA cases...." (Opp. at 7.) Yet, in defendant's view, the percent-of-fund method is nevertheless appropriate in cases such as this one because "the nature of the settlement [is a] 'Gross Sum' or 'fund' amount, that is subsequently distributed based upon whatever method or formula Plaintiffs and their counsel agreed upon...." (*Id.*)

 The Court disagrees. As the Supreme Court held in *Perdue*, "the lodestar method yields a fee that is presumptively sufficient to achieve th[e] objective [of fee-shifting statutes]." 559 U.S. at 552,

130 S.Ct. 1662. Relying on the "percent-of-fund" approach in the FLSA context would undercut the very purpose of the mandatory fee-shifting statute. As the Court of Appeals acknowledged in *Swedish Hosp. Corp.*, a case upon which defendant strongly relies, common fund cases are distinct from fee-shifting cases because "[f]ee awards authorized by statute are payable by a losing defendant whether or not there has been any monetary recovery for the named plaintiffs or for a class, in contrast to common fund fee awards that are payable of the fund recovered." 1 F.3d at 1268 (citing Newberg, *Attorney Fee Awards* § 1.10, at 17 (1986) (footnotes omitted)). Therefore, because "statutory fees are payable to prevailing parties to encourage private enforcement of statutes and deter violations, and because the results obtained are often nonmonetary or modest recoveries, *a formula for a reasonable statutory fee award based on a percentage of the recovery is not usually available to the courts.*" *Id.* (emphasis in original).[3]

 The lodestar approach has "emerged as the prevailing method of fee calculation" in fee-shifting cases for good reason. *See id.* at 1266. It compensates attorneys for their work, despite the reality that wage discrimination cases often result in small recoveries for a limited number of opt-in plaintiffs. To be sure, the use of the lodestar approach will, at

---

and carefully read an arbitration agreement, and are equally unlikely to understand a notice of an impending lawsuit. Finally, even if the notice is understood, the employee will often hesitate to sign it for fear of retaliation or deportation.")

3. Defendant argues that "even if the Court declines to use the percentage method *per se*, it unquestionably remains relevant as a cross-check to the reasonableness of the Plaintiff's lodestar-based request." (Opp. at 7 (citing *Swedish Hosp.*, 1 F.3d at 1267; *In re Living-*

*Social Mktg.*, 298 F.R.D. 1 (D.D.C.2013)).) Yet, as plaintiffs correctly respond, in both of the cases cited by the defendant the Court used the lodestar approach "to ensure that a percentage of the fund method d[id] not result in a windfall for counsel in common fund cases." (Reply at 8.) A "cross check" in the other direction does not make sense in fee-shifting cases where the very purpose of the statute is to compensate attorneys based on the work completed despite limited aggregate recoveries.

times, necessitate fee awards that exceed the aggregate recovery to their clients. Yet, this is not itself inconsistent with the underlying purpose of such fee-shifting provisions. As the Second Circuit has explained, "[e]specially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Millea v. Metro–N. R. Co.*, 658 F.3d 154, 169 (2d Cir.2011) (emphasis in original); *cf. Williams v. First Gov't Mortgage & Investors Corp.*, 225 F.3d 738, 747 (D.C.Cir. 2000) (affirming an award of almost $200,000 on recovery of $8,400 recovery in District of Columbia Consumer Protection and Procedures Act case); *In re InPhonic, Inc.* 674 F.Supp.2d 273, 281 (D.D.C.2009) (awarding $483,753.37 in fees and costs on a $39,000 settlement in DCCPPA case). For these reasons, the Court will apply the lodestar approach in calculating plaintiffs' fees.

## III. PLAINTIFF'S FEE REQUEST

Having concluded that plaintiffs' counsel's fees should be calculated based on the lodestar approach, the Court must now compute the two variables necessary to make this calculation: (1) the number of hours reasonably expended in the course of the litigation and (2) the reasonable hourly rate for these hours. *See In re InPhonic*, 674 F.Supp.2d at 280 (citing *DL v. Dist. of Columbia*, 256 F.R.D. 239, 242 (D.D.C.2009)). Based on its calculation of

these two figures, the Court will then determine the total attorneys' fees to which plaintiffs' counsel is entitled. *See Blum*, 465 U.S. at 888, 104 S.Ct. 1541; *Berke v. Fed. Bureau of Prisons*, 942 F.Supp.2d 71, 76 (D.D.C.2013).

### A. The Reasonable Number of Hours Reasonably Expended in Litigation

■ The party seeking fees has the burden of establishing that the hours billed for the work are reasonable in light of the success achieved. *See Hensley*, 461 U.S. at 437, 103 S.Ct. 1933; *Williams*, 225 F.3d at 746. That said, "[a] request for attorney's fees should not result in a second major litigation." *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C.Cir. 1995) (quoting *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933); *see also Save our Cumberland Mountains, Inc. v. Hodel*, 651 F.Supp. 1528, 1532 (D.D.C.1986) ("[Courts should be] reluctant to engage in a detailed line-by-line analysis of the fee petition ... to determine, like a quasi-management consultant, if plaintiffs' counsel could have accomplished particular tasks or pleadings more efficiently.").

In total, plaintiffs' counsel's fee application seeks compensation for over 1,450 hours of work. Plaintiffs' counsel voluntarily excluded from this figure 138.5 hours attributable to work done on their unsuccessful class certification motion and 9.6 hours attributable to attempts to reach a non-responsive opt-in class plaintiff.[4] In addition, plaintiffs' counsel also voluntarily agrees to reduce its total fee amount by five percent across-the-board in order to

---

**4.** Plaintiff does, however, include certain tasks only partially connected with the unsuccessful class certification motion—albeit at a 50% discount. The Court has briefly reviewed these entries and sees no reason why

they should not be excluded in their entirety because, as plaintiffs concede, they are not entitled to fees for the unsuccessful Rule 23 motion.

account for any inefficiencies or vague time entries. (Mot. at 14.)

Defendant nevertheless challenges the reasonableness of plaintiffs' counsel's calculation of compensable hours on the grounds that it is "clearly excessive" and is the "result[ ][of] egregious billing practices." (Opp. at 8.) Specifically, defendant contends that plaintiffs' compensable hours should be reduced on four grounds: (1) inefficient staffing, (2) inadequate documentation of work; (3) inclusion of non-compensable, non-legal work; and (4) inclusion of non-compensable work for plaintiffs' motion to amend and plaintiffs' opposition to defendants' summary judgment motion. Plaintiffs' counsel responds that defendant's complaints about "virtually every aspect of [its] practice" are "baseless." (Reply at 14.)

The Court will consider each of these challenges in turn. Ultimately, while it will conclude that the vast majority of the hours expended in the course of the litigation were reasonable (and therefore compensable), for the reasons discussed below the Court will reduce the number of compensable hours to account for (1) "clerical tasks" improperly included in the fee application and (2) work specifically done in support of plaintiffs' unsuccessful effort to amend its complaint to bring a Rule 23 opt-out class action under the DCMWA.

### 1. Inefficient Staffing

Defendant argues that the Court should reduce the number of compensable hours on the grounds that plaintiffs' counsel staffed the case inefficiently. (*See* Opp. at 11.) In support of this claim, defendant emphasizes that the fee application includes hours worked by thirteen different employees of the firm and emphasizes that in other cases courts have deemed similar staffing patterns as "overkill .... [resulting from] inefficiency and overstaffing" such that a reduction in the number of compensable hours was justified. (*See id.* (citing *Young v. Cooper Cameron Corp.* 04–cv–5968, Opp. Ex. 3 (S.D.N.Y.2009)).)

However, a careful review of plaintiffs' counsel's billing records shows that plaintiffs' counsel's staffing pattern was not inefficient. Of the more roughly 1,450 hours identified in the fee application, more than 90% are attributable to work done by two lawyers—Michael Sweeney (a partner) and Lesley Tse (an associate)—and two paralegals—Tara Tayyabkhan and Monica Ayres (who replaced Ms. Tayyabkhan as the lead paralegal on the case when she left the firm). (Reply at 15.) Most of the work therefore was completed by a three-person team comprised of a single partner, a single associate, and a single paralegal. In the Court's view this is hardly an inefficient staffing pattern. The remaining hours are attributable to three attorneys (less than ten hours), one IT professional (less than twenty-five hours), and five paralegals (less than fifty-five hours). Based on the extensive work required both prior to and during settlement, including the simultaneous representation of as many as twenty individual plaintiffs over a two-year period, the Court concludes that this limited assistance from other members of the firm was entirely reasonable. Plaintiffs' counsel's fees will therefore not be reduced on this ground.[5]

---

5. Similarly, defendant alleges that legal work was not efficiently divided among team members, citing in particular legal research conducted by partner Michael Sweeney that could have been performed by an associate.

While it is true that courts may reduce plaintiffs' counsel's fee award when legal research "could have been performed by a junior associate," the Court does not conclude that research conducted by Mr. Sweeney in this case

### 2. Inadequate Documentation of Work

Next, defendant challenges the adequacy of plaintiffs' counsel's documentation of the work completed and alleges, as a result, that the lodestar should be reduced. (Opp. at 9 (citing *Miller v. Holzmann*, 575 F.Supp.2d 2, 30 (D.D.C.2008), *aff'd in part, vacated in part. U.S. ex rel. Miller v. Harbert Int'l Constr., Inc.*, 608 F.3d 871 (D.C.Cir.2010).).) This argument is equally unconvincing. As the Supreme Court has noted. "[p]laintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended." *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. 1933. Yet, as the Court of Appeals has also explained, overly "generic" entries are insufficient to justify a fee award. *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C.Cir.2004).

■ Based on its own review of plaintiffs' counsel's billing records, the Court is satisfied that most of the relevant billing entries indicate what the attorney or staff member was doing with sufficient detail for the purpose of analyzing the propriety of tasks completed. Moreover, the Court notes that plaintiffs' counsel employed task-based (not block) billing and calculated its work in tenth of an hour increments further demonstrating an effort to document their work in the most detailed way possible. As always, plaintiffs' counsel's billing records could certainly have given more detail. However, the Court is well-aware of the trade-off between efficiency of conducting relevant tasks and the effort required to keep overly detailed billing

records. In the Court's view, plaintiffs' counsel in this case did more than enough to walk this fine line and adequately account for its hours. Additionally, the Court is satisfied that any insufficient documentation has been sufficiently accounted for by plaintiffs' counsel's voluntary reduction of the final lodestar figure by 5%. *See Michigan v. EPA*, 254 F.3d 1087, 1095 (D.C.Cir.2001) (reducing the lodestar figure by 10% where "numerous entries" were "devoid of any descriptive rationale for their occurrence."); *In re InPhonic*, 674 F.Supp.2d at 290 (reducing final lodestar figure by five percent as a result of block billing and vague time entries.) The Court therefore will not further penalize plaintiffs' counsel for inadequate documentation of the hours worked.

### 3. Clerical Work and Marketing Activities

■ Defendant also challenges the inclusion of non-legal work in its application for fees. (Opp. at 12.) Generally, "[a] prevailing party entitled to 'reasonable' attorneys' fees may not recoup fees for time a professional spent on purely clerical tasks because such tasks 'ought to be considered part of normal administrative overhead.'" *Miller*, 575 F.Supp.2d at 30 (quoting *Michigan v. EPA*, 254 F.3d at 1095–96.). That said, while many tasks identified in plaintiffs' billing records may appear clerical on their face, in reality they are integral parts of the legal and factual development of the case and are therefore fully compensable. As the Supreme Court has explained, "[s]uch work

should be excluded. *See Laffey*, 746 F.2d at 26. As the Court of Appeals has recognized, *"by deferring to the market we have obviated the need to set a 'true' staffing pattern to go along with a 'true value' set on the firm's services ....* This market-tested allotment of both tasks and fees is not to be questioned by this court so long as it is reasonable." *Id.*

(emphasis in original). Though such research costs might be inappropriate at a more highly leveraged firm, the Court does not find Mr. Sweeney's legal research to be unreasonable in light of the fact that he and Ms. Tse conducted the vast majority of the legal and factual work on the case.

might include, for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989).

Plaintiffs' counsel's fee application includes two types of allegedly "clerical work." The first is identified as a separate line item in plaintiffs' counsel's fee application labeled "clerical work" charged at a rate of $75 per hour. (*See* Mot. at 18.) The Court will exclude this line item in its entirety because, by plaintiffs' own assessment, these tasks were clerical. Such tasks are generally considered "normal administrative overhead" that are not compensable. *See Lopez v. Dist. of Columbia,* 383 F.Supp.2d 18, 25 (D.D.C.2005), *amended* 388 F.Supp.2d 1 (quoting *In re Olson,* 884 F.2d 1415, 1426–27 (D.C.Cir.1989) ("This Circuit has addressed the question of whether clerical work is compensable and has concluded that Congress never intended for clerical billings to be included in attorneys' fees and that such services are 'generally considered within the overhead component of a lawyer's fee.' ")

■ The second set of entries that must be excluded from plaintiffs' counsel's compensable hours are tasks that despite being clerical were not labeled as such and were therefore included in the hours charged at the staff member or attorney's normal hourly rate. Admittedly, the classification of certain tasks as "clerical" and others as "legal" is somewhat subjective. Yet, the parties have compelled the Court to calculate reasonable attorneys' fees and therefore it has no choice but to engage in such analysis. In reviewing plaintiffs' counsel's billing records, the Court focused on identifying purely clerical tasks that could be completed by "librarians, clerical personnel[,] and other support staff" from legal and factual tasks that were best completed by "law clerks and paralegals." *See Dickens v. Friendship–Edison P.C.S.,* 724 F.Supp.2d 113, 124 (D.D.C.2010) (quoting *In re Olson,* 884 F.2d at 1426–27). In deciding which of these entries should be excluded, the Court carefully scrutinized the annotated copy of plaintiffs' counsel's billing records provided by the defendant. Based on its own independent analysis of these entries, the Court concludes that most of the entries flagged by defendant are not in fact clerical because they require familiarity with the facts and law of the case.[6] *See, e.g., Cobell v. Norton,* 407 F.Supp.2d 140, 164 (D.D.C.2005) (listing compensable paralegal tasks such as bates numbering, preparing inventories of documents, and pulling documents for trial). However, other entries such as filing motions on the electronic case management system and preparing shipping labels, while necessary, are not compensable under fee-shifting statutes. *See Lopez,* 383 F.Supp.2d at 25 (classifying "filing" as a non-compensable clerical task). As a result, the Court will reduce the number of compensable hours in plaintiffs' fee application by 7.6 hours to exclude these tasks.[7]

---

6. In this category the Court includes interviews and communications with potential witness and potential plaintiffs such as Joan Mitchell. Such interviews are part of reasonable preparation in an FLSA case. *See, e.g., Cobell,* 407 F.Supp.2d at 164 (including witness interviews among compensable tasks).

7. Specifically, Anibal Garcia's compensable hours will be reduced by .5 hours in 2011–2012, 5.7 hours in 2012–2013, and .3 hours in 2013–2014; Carolyn Mow's hours will be reduced by .5 hours for 2013–2014; Monica Ayres's hours will be reduced by .4 hours for 2012–2013, and .4 hours in 2013–2014; and

██ Defendant further contends that fees expended for "marketing activities" should similarly be excluded from plaintiffs' counsel's compensable hours. (Opp. at 13.) However, the "marketing activities" that defendant disputes were not undertaken in support of plaintiffs' counsel's business *per se*, but rather sought to publicize the availability of an opt-in class and helped communicate with class members. The Court concludes that such tasks are integral to litigating an opt-in class action under wage discrimination statutes and therefore are compensable. *See Kabore v. Anchor Staffing, Inc.*, 2012 WL 5077636 at *8 (D.Md. Oct. 17, 2012) (concluding that plaintiffs' counsel could be compensated for marketing fees where those marketing efforts were used "as a vehicle for providing necessary information to the opt-in Plaintiffs rather than 'communicating with its clients and prospective clients in the more general sense. . . .").

### 4. Work Done on Plaintiff's Unsuccessful Claims

Defendant argues that "even a quick review of the time entries indicates that counsel are in fact seeking to recover for time spent on th[e] unsuccessful [class certification] motion as well as their closely related motion to amend the complaint, and opposition of GW's motion for summary judgment." (Opp. at 9–11.) In defendant's view, these hours are not compensable on the grounds that they are connected with an unsuccessful claim. Plaintiffs' counsel responds that it "excluded 138.5 hours attributable to Plaintiffs' unsuccessful class certification motion and 9.6 hours attributable to attempting to contact Plaintiff Sheena King after she became unresponsive to communications," but that its work in opposing defendant's summary judgment motion is compensable

on the grounds that the successful claims embodied in the settlement agreement were sufficiently related to the unsuccessful claim such that they are compensable. (*See* Reply at 18.)

██ While the parties agree on the relevant legal standard for analyzing this issue, they disagree on its application to this case. The Court of Appeals has consistently held that in fee-shifting cases plaintiffs' counsel "may recover fees only for work related to the claim on which he prevailed, and the fees awarded on that claim must be reasonable in relation to the success achieved." *Williams*, 225 F.3d at 746. However, such fees should be excluded only when "the claims are 'distinctly different' in all respects, both legal and factual, from plaintiff's successful claims." *Id.* (citing *Morgan v. Dist. of Columbia*, 824 F.2d 1049, 1066 (D.C.Cir.1987)). Where "other causes of action 'constitute[ ] different legal attacks upon the same factual premise' " they should not be excluded from plaintiffs' counsel's fee allocation. *In re InPhonic*, 674 F.Supp.2d at 284 (quoting *Goos v. National Association of Realtors*, 997 F.2d 1565, 1569 (D.C.Cir. 1993)).

In *In re InPhonic*, for example, a case brought under the D.C. private attorney general statute (DCCPPA) and settled by the parties, this Court faced the similar question of whether plaintiffs' counsel was entitled to attorneys' fees for work done on unsuccessful claims under other D.C. consumer protection statutes, RICO, and common law. 674 F.Supp.2d at 284. There, the Court concluded that all of the non-DCCPPA claims concerned the same fundamental allegation—"that defendants intended to deceive consumers through the issuance of misleading rebates"—and· "[o]nly by establishing this central and

Michael Russo's hours will be reduced by .1 hour for 2012–2013.

difficult premise" could plaintiffs recover "on any of their legal theories." *Id.* Therefore, the Court concluded that because "it c[ould not] be said that the unsuccessful claims were distinctly different in *all* respects, both legal and factual, from plaintiff's successful claims," plaintiff's counsel was entitled to fees for the work done on all of their claims. *Id.* at 284–85.

Plaintiff contends that this case is like *In re InPhonic* in that "[a]ll the claims against GWU involved a 'common core of facts' and 'related legal theories' ... [and the] legal theories were all intended to establish the illegality of the same conduct by GWU...." (Mot. at 17.) Therefore, in plaintiffs' view, they are entitled to fees for the contested motion to amend its complaint to add Rule 23 claims under the DCMWA and opposition to defendants' motion for summary judgment on its DCWPLA claim. Defendant responds, however, that unlike *In re InPhonic*, plaintiffs' unsuccessful claims had "nothing to do with 'what was at stake' for the plaintiffs who ultimately recovered in this case" and instead only "tied to [plaintiffs'] efforts to oppose class certification...." (Opp. at 10 n.10.)

■ On the motion for summary judgment, the Court agrees with the plaintiff. Plaintiffs' DCWPLA claim concerned the same fundamental allegation as its successful claims; namely, that defendant violated the law when it failed to pay employees sufficient overtime pay. Just as in *In re Phonic*, plaintiffs' unsuccessful claim therefore should be classified as a "different legal claim based upon the same factual premise." In fact, plaintiffs' case is even stronger than the plaintiffs' case in *In re InPhonic* because in dismissing plaintiffs' DCWPLA claim at the motion for summary judgment stage, this Court expressly relied on the fact that the DCMWA claim and DCWPLA rested on

"identical facts," i.e., that the DCWPLA "claim is based on the same facts as his DCMWA claim," and therefore was not actionable. *Driscoll II,* 938 F.Supp.2d at 23. While the incentive for plaintiff to bring the DCWPLA claim may very well have been to provide an additional procedural vehicle (an opt-*out* class action), the central question for the Court at this juncture is whether the "claim" was sufficiently related factually or legally to the successful claims. Based on its earlier opinion, the Court is confident that it was and the work done to oppose defendant's motion for summary judgment, while unsuccessful, is therefore compensable.

On the motion to amend, however, the Court agrees with the defendant. In this motion plaintiff sought to amend his complaint to include an opt-out class action under the DCMWA in addition to the opt-in provisions provided by district law. *Driscoll I,* 42 F.Supp.3d at 62, 2012 WL 3900716 at *8. The Court denied this motion in so far as it attempted to add opt-out claims under the DCMWA, concluding that "the DCMWA's opt-in provision [wa]s so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* (internal citations and quotation marks omitted). It is without dispute that this part of plaintiffs' motion was unsuccessful. Moreover, unlike the summary judgment motion, the sole purpose of this motion to amend was to add a Rule 23 procedural vehicle. The Court therefore concludes that just as plaintiffs have voluntarily excluded fees for their unsuccessful class certification motion under the DCWPLA, they also should have excluded fees attributable to the unsuccessful motion to amend their complaint to bring an opt-out DCMWA claim. Because the motion to amend was successful insofar as it sought to add additional facts to the other three claims (a relatively small

percentage of the new amended complaint), the Court therefore will reduce plaintiffs' fees attributable to this motion by only 75%.[8] Based on the Court's review of the billing records, the Court will subtract 18.975 hours of Leslie Tse's time for 2012–2013 and 12.1 of Michael Sweeney's time for 2012–2013 on this ground.

### B. The Reasonable Hourly Rate

The second variable that the Court must calculate to determine plaintiff's fees is the reasonable hourly rate for each of the relevant employees. The determination of a "reasonable hourly rate" requires an analysis of at least three elements: "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington v. Dist. of Columbia*, 57 F.3d at 1107.

As a preliminary matter, the Court has already concluded in section III.A, *supra*, that plaintiffs' counsel's billing practices were reasonable. Additionally, despite defendant's conclusory allegations that plaintiffs' counsel has "not provided any evidence of their skill, experience, or reputation," (Opp. at 14), the Court is satisfied that plaintiffs' counsel has extensive experience based on the findings by "other district courts around the country [that] have recognized, [the firm's] experience and skill in prosecuting wage-and-hour class litigation." *Brumley v. Camin Cargo Control Inc.*, 2012 WL 1019337 (D.N.J. Mar. 26, 2012); *see also, e.g., Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 119 (E.D.N.Y.2011); *Lewis v. Alert Ambulette*

*Serv. Corp.*, 2012 WL 170049 (E.D.N.Y. Jan. 19, 2012). The central issue, therefore, is the determination of the "prevailing market rate" for each of the relevant employees.

The prevailing market rate is generally established either by the rate at which prior fee awards have been made or based on published surveys of prevailing rates in the community, such as the U.S. Attorney's Office's *Laffey* matrix. *Id.* at 1109. The parties agree that the appropriate rate to be applied is the one provided by the *Laffey* matrix. (Mot. at 8; Opp. at 15.) They disagree, however, on three related issues. First, they disagree on which jurisdiction's *Laffey* matrix should be used to calculated plaintiffs' counsel's fees (the matrix for the District of Columbia where the case was tried or the matrix for the Northern District of New York where plaintiffs' counsel's firm is located). Second, they disagree on whether the 2014 *Laffey* matrix should be used for all of the work completed or whether the *Laffey* matrices in place at the time the work was actually completed should be used instead. Third, the parties disagree on how Ms. Tse's experience should be classified for purposes of the *Laffey* matrix calculation.

### 1. The D.C. *Laffey* Matrix Should Be Used to Calculate the Reasonable Market Rate

In fee-shifting cases such as this one, the prevailing market rate is generally calculated based on the market rate in the forum jurisdiction. *See Donnell v. United States*, 682 F.2d 240, 251 (D.C.Cir. 1982). This rule is both "simple . . . to

8. Additionally, defendant identifies a single line-item that it argues should have been excluded from plaintiffs' fee request because it is attributable to plaintiffs' unsuccessful class certification motion. The line item in question is attributable to Leslie Tse for 1.1 hours of work completed on June 12, 2012. It reads, "reviewed/organized interview notes and client docs in preparation for drafting declaration for D. Driscoll for motion for class cert." (*See* Opp. at 10.). The Court will exclude this 1.1 hours attributable to Ms. Tse in 2012–2013 from plaintiffs' compensable hours as it applies to work done only on the unsuccessful class certification motion.

follow" and represents a "neutral rule which will not work to any clear advantage for either [party]...." *Id.* That said, the Court of Appeals has recognized an exception "where out-of-jurisdiction lawyers would receive substantially higher rates than they ordinarily command for work done almost exclusively in their home territory." *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA,* 169 F.3d 755, 758 (D.C.Cir.1999). Defendant seeks to rely on this narrow exception to support its position that the *Laffey* matrix for the Northern District of New York where plaintiffs' counsel is located should be used instead of the D.C. *Laffey* matrix. In defendant's words, "there is no indication that any significant portion of the work Plaintiffs' counsel performed on this case was conducted in the District of Columbia...." (Opp. at 16.) However, as defendant is well aware, a great deal of work for this case was completed within the District of Columbia, despite the fact that plaintiffs' counsel is located in New Paltz, New York. This work included court appearances, client interviews, and most notably, extensive settlement discussions. This fact alone distinguishes the present case from *Davis County* and compels the Court to conclude that the forum rule should be followed in this case.[9]

## 2. Historical Rates, Not Present Rates Should Be Used

▆▆▆▆ Plaintiffs argue that despite the fact that the work for this case was completed primarily in 2012 and 2013, the Court should calculate all of plaintiffs' compensable fees based on the 2014 D.C. *Laffey* matrix. In support of this position, plaintiffs' counsel argues that "[t]he Supreme Court and lower courts have consistently held that where payment is delayed in fee-shifting cases, a court *may* compensate for the time value of money by either using historic billing rates plus interest or by using present-day rates." (Mot. 11 (emphasis added).) While an accurate characterization of the law, it is of little help to plaintiffs' counsel's case. As this Court has previously explained—albeit in *dicta*—"a significant number of those [cases] ... dealt specifically with fee shifting ... in protracted civil rights litigation" such that the use of present-day rates was necessary to adequately compensate plaintiffs' counsel. *See In re LivingSocial Mktg. and Sales Practice Litig.,* 298 F.R.D. at 20–21, 2013 WL 1181489 at *19. Here plaintiffs' counsel faces, at most, a two year delay in receiving their fees and as such would receive an unwarranted windfall if 2014 rates were used for the entirety of their fee request. A contrary conclusion would only serve to incentivize plaintiffs' counsel to drag out the attorney's fee process as opposed to encouraging prompt disposition. The Court therefore will alter plaintiffs' calculations so that the hourly rate for each employee is adjusted based on the year in which the underlying work was performed.[10]

---

**9.** It should be noted, however, that the Court finds plaintiffs' counsel's second argument for using the D.C. *Laffey* matrix less convincing. Plaintiffs' counsel argues in its Reply that it is also entitled to the D.C. *Laffey* matrix fees because the fees it generally charges other clients exceeds those identified in the D.C. *Laffey* matrix. (Reply at 9.) Therefore, despite a significantly lower prevailing market rate in the Northern District of New York where its firm is located, counsel would not receive a windfall as a result of this Court applying the D.C. *Laffey* matrix. However, the nature of plaintiffs' counsel's work is such that it rarely charges its clients by the hour and instead often works on a contingency basis or, as in this case, under a fee-shifting statute. The firm's published "hourly rates" are therefore of little value to the Court's market rate analysis and the Court declines to rely on this reason for reaching its conclusion that the D.C. *Laffey* matrix should apply.

### 3. Ms. Tse's Rate

The final issue upon which the parties disagree is the reasonable rate for the work done by Ms. Tse, the primary associate on the case. Ms. Tse graduated from law school in 2006. *See* "Attorneys & Paralegals," *http://getmansweeney.com/attorneys_paralegals* (last visited July 16, 2014). Plaintiffs' counsel contends that this entitles the firm to calculate her hourly rate based on the fee for associates that have between eight and ten years' experience. Defendant on the other hand argues that this only entitles plaintiffs' counsel to charge for an associate with between five and seven years' experience.

 Part of this disagreement stems from the disagreement over the appropriate year's *Laffey* matrix that should be used. Because the Court has already concluded that it will use the 2012 *Laffey* matrix fees for work done in 2012 and the 2013 *Laffey* matrix fees for work done in

2013, it is equally true that Ms. Tse's rate should be calculated based on her experience in those relevant years. That said, even if the Court were to apply the 2014 *Laffey* matrix fees for the entirety of plaintiffs' counsel's work, as the Court is permitted to do in its discretion, it would make no sense whatsoever to *also* calculate Ms. Tse's work as if she had eight-to-ten years of experience for years that she only had six or seven years of experience. The Court will therefore re-calculate Ms. Tse's fees based on the level of experience she had in the year the work was performed. The Court will similarly account for the fact that Dan Getman's experience for purposes of the *Laffey* matrix reached a new threshold in 2014.

### C. Total Recoverable Fees

For the reasons discussed above, the Court is now able to calculate the appropriate fees to which plaintiff is reasonably entitled.

**Non–Travel Related Fees**

10. Plaintiffs' counsel created a rate for its IT professional, Michael Russo. While reasonable, the Court will account for his work in previous years by subtracting $5 per hour per year (2011–2012 rate: $185; 2012–2013 rate: $190; 2013–2014 rate: $195) consistent with other *Laffey* Matrix amounts.

| Name | Role | 11-12 Rate | 12-13 Rate | 13-14 Rate | 11-12 Hours | 12-13 Hours | 13-14 Hours | Total Hours | Total $ |
|---|---|---|---|---|---|---|---|---|---|
| Dan Getman | Partner | 435 | 445 | 510 | 4.5 | 2.7 | 1.1 | 8.3 | 3720 |
| Michael Sweeney | Partner | 435 | 445 | 450 | 49.2 | 196.7 | 121 | 366.9 | 163383.50 |
| Matt Dunn | Associate | 285 | 290 | 295 | 0.3 | 0 | 0 | 0.3 | 85.50 |
| Lesley Tse | Associate | 285 | 290 | 360 | 29.2 | 311.725 | 180 | 520.925 | 163522.30 |
| Diana Marin | Associate | 285 | 290 | 295 | 0 | 0.1 | 0 | 0.1 | 29 |
| Mike Russo | IT | 185 | 190 | 195 | 1.6 | 8.2 | 13.4 | 23.2 | 4467 |
| Monica Ayres | Paralegal | 140 | 145 | 145 | 0 | 107 | 143.3 | 250.3 | 36293.50 |
| James Sherwood | Paralegal | 140 | 145 | 145 | 0 | 0 | 3.3 | 3.3 | 478.50 |
| Anibal Garcia | Paralegal | 140 | 145 | 145 | 2.2 | 7.9 | 0.8 | 10.9 | 1569.50 |
| Janice Pickering | Paralegal | 140 | 145 | 145 | 12.7 | 2.4 | 0.8 | 15.9 | 2242 |
| Carolyn Mow | Paralegal | 140 | 145 | 145 | 0 | 4.3 | 4 | 8.3 | 1203.50 |
| Tara Tayyabkhan | Paralegal | 140 | 145 | 145 | 79.3 | 37.5 | 0 | 116.8 | 16539.50 |
| Kathy Weiss | Paralegal | 140 | 145 | 145 | 0.8 | 7.5 | 0.9 | 9.2 | 1330 |
| | | | | | | | | TOTAL | $394863.75 |
| | | | | | | | | -5% | $375120.60 |

*Note 2 to the *Laffey* matrix states that "experience refers to the years following the attorney's graduation from law school. Mr. Getman graduate from law school in 1984, Mr. Sweeney in 1996, Ms. Tse in 2006, Mr. Dunn in 2003, and Ms. Marin in 2012. The rates in this chart correspond to the number of years of experience each individual had at the time the rate was calculated. *See* "Attorneys & Paralegals," http://getmansweeney.com/attorneys_paralegals (last visited July 16, 2014)

In addition, plaintiffs' counsel is entitled to travel costs at half their hourly rate. *See Bucher v. District of Columbia,* 777 F.Supp.2d 69, 77 (D.D.C.2011) (citing *Cooper v. United States R.R. Ret. Bd.,* 24 F.3d 1414, 1417 (D.C.Cir.1994)).)

**Travel Costs (Charged at 50% rate)**

| Name | Role | 11-12 Rate | 12-13 Rate | 13-14 Rate | 11-12 Hours | 12-13 Hours | 13-14 Hours | Total Hours | Total $$$ |
|---|---|---|---|---|---|---|---|---|---|
| Michael Sweeney | Partner | 435 | 445 | 450 | 0 | 6 | 11.3 | 17.3 | 7755 |
| Lesley Tse | Associate | 285 | 290 | 360 | 0 | 9.3 | 5 | 14.3 | 4497 |
| Monica Ayres | Paralegal | 140 | 145 | 145 | 0 | 0 | 6.9 | 6.9 | 1000.50 |
| | | | | | | | | **TOTAL** | $13252.20 |
| | | | | | | | | **-5%** | $12589.88 |

Adding the total amounts from the above tables, the final amount to which plaintiffs' counsel is entitled in fees is $387,710.48.

### D. Costs

██ In addition to fees, plaintiffs' application also seeks costs in the amount of $13,510.42. Plaintiffs' provide the relevant invoices and receipts to justify this amount. (Mot.Ex. B.) Defendant only challenges the inclusion of the costs plaintiffs incurred for the mediator. In defendant's view, "[p]laintiffs' counsel seeks a $6,000 payment for the fees of the mediator, despite the fact that such fees were paid by GW[U]. Plaintiffs' request for costs should be reduced by that amount." (Opp. at 11 n. 11.) While plaintiffs failed to expressly rebut this claim in their reply, the "Advance Payment Invoice" included among plaintiffs' documentation exhibit, indicates that the "invoice total [of $6000] is *based upon the fee split agreed to by all parties.*" (Mot. Ex. B. at 22 (emphasis added).) Moreover, this invoice expressly states that $6,000 is the amount owed by David Driscoll, et. al." It is well-established in this Circuit that compensable costs include all "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Laffey,* 746 F.2d at 30. Because it is clear that a fee-paying client would be responsible for the $6,000 in mediator fees, the Court is satisfied that defendant is responsible for plaintiffs' half of the mediator fee as well as their own. Plaintiffs' counsel is therefore entitled to their full request for $13,510.42 in costs.

### CONCLUSION

Accordingly, and for the reasons stated above, plaintiffs' counsel's application for costs and fees is **GRANTED IN PART.** Plaintiffs' counsel is awarded $387,710.48 in fees and $13,510.42 in costs, and such payment shall be made in accordance with the settlement agreement.

**SO ORDERED.**